IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JAVIER C.,**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) No. 24 C 07857 |
| v. | ) |
| | ) Magistrate Judge Laura K. McNally |
| **FRANK BISIGNANO,** | ) |
| **Commissioner of Social Security**[2] | ) |
| | ) |
| **Defendant.** | ) |

**ORDER**[3]

Before the Court is Plaintiff Javier C.'s brief in support of his motion for summary judgment on the Administrative Law Judge's ("ALJ") decision denying his disability benefits application (D.E. 13: Pl. Mot. for Summ. J., "Pl. Mot."), and Defendant's motion (D.E. 20) and memorandum in support of his motion for summary judgment (D.E. 21: Def. Mem. in Support of Mot. for Summ. J.).

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Frank Bisignano for his predecessor(s) as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On September 3, 2024, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (D.E. 7.)

I. **Procedural History**

Plaintiff applied for disability insurance benefits on April 27, 2022 and for supplemental security income on April 30, 2022. (R. 15.) Plaintiff alleged disability beginning April 15, 2022 on both applications. (*Id.*) Plaintiff's date last insured is June 30, 2027. (R. 16.) The ALJ held a telephone hearing on December 5, 2023 (*id.*) and on March 14, 2024 issued a written decision denying Plaintiff's application, finding him not disabled under the Social Security Act.[4] (R. 24.) This appeal followed. For the reasons discussed, Plaintiff's motion is granted, and the Commissioner's motion is denied.

II. **The ALJ Decision**

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims, described below. At Step One, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (R. 18.) At Step Two, the ALJ determined that Plaintiff suffers from the severe impairment of epilepsy, which significantly limits Plaintiff's ability to perform basic work-related activities for 12 consecutive months. (*Id.*) The ALJ also found that Plaintiff had the medically determinable impairment of asthma, which caused no more than minimal functional limitations and was therefore nonsevere. (*Id.*)

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

At Step Three, the ALJ found that Plaintiff's impairments did not meet or medically equal a statutory Listing, despite "special emphasis [in considering] Listing 3.03 and 11.02." (*Id*.) Before Step Four, the ALJ assessed a residual functional capacity for Plaintiff to perform a full range of work "at all exertional levels" but with the following nonexertional limitations:

> no climbing ladders, ropes, or scaffolds; occasionally climb ramps and stairs; no exposure to hazards, such as unprotected heights and dangerous moving machinery; no commercial driving; no work with sharp instruments such as box cutters or knives; no work around open pools or live electrical wires.

(*Id.*)

At Step Four, the ALJ found that Plaintiff was unable to perform his past relevant work as a cutting machine tender. (R. 22.) At Step Five the ALJ found that there were other jobs in the national economy that matched Plaintiff's residual functional capacity. (R. 23.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (R. 24.)

### III.    Legal Standard

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the

3

plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either Step Three or Step Five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step other than at Step Three precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at Steps One to Four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work that exists in significant numbers in the national economy. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit ruled, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by

4

a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024).

"All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054. The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted).

The Seventh Circuit has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted). If an ALJ gives specific reasons supported by the record, the Court "will not overturn a credibility determination unless it is patently wrong." *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021).

5

**IV. Analysis**

Plaintiff's only severe impairment in this case is his epilepsy. Plaintiff contends that the ALJ failed to adequately consider the impacts of Plaintiff's epilepsy on his ability to work. Specifically, Plaintiff argues that (1) the ALJ erred at Step Three by finding Plaintiff did not meet Listing 11.02C or its equivalent (Pl. Mot. 6-9), and (2) the ALJ's assessment of Plaintiff's residual functional capacity was flawed because the ALJ analyzed Plaintiff's credibility incorrectly. (Pl. Mot. 12-14.)

With respect to both of Plaintiff's assignments of error, the ALJ's determinations relied on a finding that Plaintiff was noncompliant with treatment. Specifically, the ALJ found two types of noncompliance: Plaintiff did not always take his epilepsy medication, and Plaintiff did not follow through with a referral to an Epilepsy Monitoring Unit to help determine his proper medication dosage. After considering the evidence and the parties' arguments, the Court concludes that the ALJ's determinations regarding noncompliance were not supported by substantial evidence, and this case must be remanded.

    **A.    Substantial Evidence Does Not Support a Finding that Plaintiff's Seizures Were Caused by Noncompliance.**

The Social Security regulations specify that to qualify as disabled under Listing 11.02C, a claimant must have

> 11.02 Epilepsy, documented by a detailed description of a typical seizure and characterized by

6

> C. Generalized tonic-clonic seizures, occurring at least once every 2 months for at least 4 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:
> 1. Physical functioning; or
> 2. Understanding, remembering, or applying information; or
> 3. Interacting with others; or
> 4. Concentrating, persisting, or maintaining pace; or
> 5. Adapting or managing oneself.

20 C.F.R. pt. 404-P, app. 1 (2025).

When the ALJ evaluated Plaintiff for Listing 11.02, the ALJ explained that Plaintiff does not meet the Listing's "adherence to prescribed treatment" requirement because "the record is replete with notations about missing medications." (R. 18.)

"[E]vidence of noncompliance by itself proves nothing under [Epilepsy Listing]; what matters instead is whether the record contains evidence of a causal link between the noncompliance and the ongoing seizure episodes." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Indeed, "the ALJ must have some reason to think that the applicant's seizures would not continue at their current rate were the prescribed treatment followed." *Id*. An absence of this link warrants remand. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

Here, the ALJ pointed to several instances in which Plaintiff missed his medication and subsequently had a seizure. (R. 20-22). The ALJ did not, however, address whether Plaintiff's epilepsy was controlled when he was compliant with his medication. Indeed, the record suggested the opposite.

7

In August 2020, Plaintiff's doctor stated that Plaintiff was still having seizures despite being compliant. (R. 769.) Plaintiff's doctor reported at the time of Plaintiff's October 2023 seizure that Plaintiff did not report a trigger for it. (R. 802.) Evidence from July 2022 also showed that Plaintiff's treating neurologist found that Plaintiff's seizures may be "out of control . . . despite taking Keppra and healthier lifestyle changes." (R. 22.)

While the ALJ found the July 2022 statement unpersuasive (*id.*), he acknowledged that "it is unclear" whether Plaintiff still had seizures when he was compliant with treatment. (R. 20.) Without evidence that demonstrates a logical bridge between Plaintiff's noncompliance and his seizures, the ALJ's assessment warrants remand. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

    **B.**    **The ALJ's Subjective Symptom Analysis was Patently Wrong.**

In determining Plaintiff's residual functional capacity, the ALJ concluded that Plaintiff's subjective description of his symptoms lacked credibility because Plaintiff had been noncompliant with treatment. Specifically, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of his seizures were inconsistent and unsupported because Plaintiff "only has seizures when he has missed doses of medication" (R. 19) – a statement that contradicts the ALJ's separate conclusion that "it is unclear" whether Plaintiff has seizures when he is compliant with medication (R. 20).

8

"While an ALJ can consider a claimant's non-compliance with treatment in evaluating credibility, the Seventh Circuit has held that an ALJ must not draw any inferences about a claimant's condition from [his] non-compliance unless the ALJ explored the claimant's explanations for the non-compliance." *Torres v. Kijakazi*, No. 20-C-1033, 2022 WL 843931, at *3 (E.D. Wis. Mar. 22, 2022); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *Jose V. v. Kijakazi*, No. 21 CV 896, 2023 WL 8934938, at *4 (N.D. Ill. Dec. 27, 2023); *see also* SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints . . . We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms."). Such a reason is enough, by itself, to require remand. *Craft*, 539 F.3d at 681; *Torres*, No. 20-C-1033, 2022 WL 843931 at *3; *Jose V.*, No. 21 CV 896, 2023 WL 8934938 at *4.

In the hearing, the ALJ never questioned Plaintiff about the reasons for his noncompliance with taking his seizure medication or with the referral to the Epilepsy Monitoring Unit. By failing to investigate the reasons for Plaintiff's noncompliance before relying on that noncompliance to undermine Plaintiff's credibility, the ALJ committed reversible error.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion seeking to remand the ALJ's decision (D.E. 13) and denies that of Defendant seeking to affirm (D.E. 20).

**SO ORDERED.**

                                            **ENTER:**

_____

**LAURA K. MCNALLY**

**United States Magistrate Judge**

**DATED: May 30, 2025**